Tanya E. Moore, SBN 206683
MOORE LAW FIRM, P.C.
300 South First Street, Ste. 342
San Jose, California 95113
Telephone (408) 298-2000
Facsimile (408) 298-6046
E-mail: service@moorelawfirm.com
         tanya@moorelawfirm.com

Attorney for Plaintiff
Francisca Moralez

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

FRANCISCA MORALEZ, )  No.
                    )
         Plaintiff, )  **COMPLAINT ASSERTING DENIAL OF**
                    )  **RIGHT OF ACCESS UNDER THE**
    vs.             )  **AMERICANS WITH DISABILITIES ACT**
                    )  **FOR INJUNCTIVE RELIEF,**
DIAMOND RIDGE POST ACUTE LLC dba )  **DECLARATORY RELIEF, DAMAGES,**
DIAMOND RIDGE HEALTHCARE )  **ATTORNEYS' FEES AND COSTS (ADA)**
CENTER; SMV PITTSBURG LLC; )
                    )
         Defendants. )
                    )
_____ )

### I. SUMMARY

1.     This is a civil rights action by plaintiff FRANCISCA MORALEZ ("Plaintiff") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as:

> Diamond Ridge Health Center
> 2351 Loveridge Road
> Pittsburg, California 94565
> (hereafter "the Facility")

2.     Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against DIAMOND RIDGE POST ACUTE LLC dba DIAMOND RIDGE HEALTHCARE CENTER and SMV PITTSBURG LLC (hereinafter collectively referred to as

"Defendants"), pursuant to Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.) ("ADA") and related California statutes.

## II.    JURISDICTION

3.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4.    Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III.    VENUE

6.    All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV.    PARTIES

7.    Defendants own, operate, and/or lease the Facility, and consist of a person (or persons), firm, and/or corporation.

8.    Plaintiff suffers from rheumatoid arthritis and is substantially limited in her ability to walk, and must use a wheelchair for mobility. Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

## V.    FACTS

9.    The Facility is open to the public, intended for non-residential use, and its operation affects commerce. The Facility is therefore a public accommodation as defined by applicable state and federal laws.

10.    Plaintiff lives about ten miles from the Facility. Plaintiff was a patient at the Facility from on or about May 29, 2023 to June 12, 2023, while recovering from an injury. Plaintiff returned to the Facility on or about June 17, 2023, June 24, 2023, June 27, 2023, and July 21, 2023 to visit a friend.

//

11.     During her visits to the Facility, Plaintiff has personally encountered barriers (both physical and intangible) that interfered with, if not outright denied, Plaintiff's ability to use and enjoy the goods, services, privileges and accommodations offered at the Facility. These barriers include, but are not necessarily limited to, the following:

a.     During Plaintiff's visits on June 17, 2023 and June 24, 2023, Plaintiff had difficulty locating a van-accessible parking stall due to a lack of proper signage and pavement markings, and parked at a space next to what appeared to be a loading zone. The surface of the loading zone was excessively sloped, with cracks and bumps, which made it difficult for Plaintiff to use her ramp to unload from her vehicle.

b.     During Plaintiff's visits on June 17, 2023 and June 24, 2023, it was difficult for Plaintiff to make her way from her parking stall to the Facility entrance, because the curb ramp along the route was excessively sloped and difficult to ascend. Plaintiff had also encountered this barrier on June 12, 2023 when being discharged, as she almost fell out of the wheelchair she was being pushed in due to the excessive slope. Additionally, the path to the front door lacked sufficient clear width and it was difficult for her to make a right turn to go into the entrance. When leaving, Plaintiff decided to try a different path due to the excessive slope she had encountered earlier, but found the other route was also excessively sloped and uneven.

c.     During her visit on June 27, 2023, Plaintiff parked across the street. The path of travel from the public sidewalk to the Facility entrance was excessively sloped and cracked, and difficult for Plaintiff to negotiate in her wheelchair.

d.     On all dates, it was difficult for Plaintiff to open the front entrance doors because they were heavy and closed quickly on her, causing pain.

//

e.    The threshold at the front entrance was too high, and there was a loose rug on the floor which was difficult for Plaintiff to wheel over. When Plaintiff was leaving through the front entrance, the loose rug caught on the door and made it very difficult for Plaintiff to push the door open.

f.    During her stay as a patient, Plaintiff stayed in Room 105, and on June 17, 2023, June 24, 2023, and June 27, 2023 she returned to Room 105 to visit her friend. The interior of Room 105 lacked sufficient clearances and clear width of the routes of travel, which prevented Plaintiff from reaching many of the elements within the room (e.g. blinds, window latch, closet, etc.) and Plaintiff and her friend could not both sit in wheelchairs and comfortably face each other. Plaintiff needed to use the restroom, but could not access it because her friend's wheelchair blocked the route. When Plaintiff had been staying in the room, the lack of clearances caused her significant difficulty in that she could not easily maneuver around the room or to the bathroom, and could not get into a comfortable position to watch TV.

g.    Although Plaintiff could not use the bathroom while visiting her friend due to the lack of clearances within the room, she is aware of barriers within the bathroom that she encountered during her stay as a patient, including but not necessarily limited to the following:

i.    The bathroom door is not self-closing, and swings open by itself.

ii.    The toilet seat cover and paper towel dispensers in the bathroom are positioned beyond accessible reach ranges.

iii.    The grab bars at the toilet in the bathroom are improperly configured and/or positioned.

iv.    The bathroom door handle is not properly configured as accessible, and requires tight grasping, pinching, and/or twisting of the wrist to operate.

v.   The coat hook outside the bathroom is positioned too high.

h.   In addition, Plaintiff is aware of other barriers to her access that exist at the Facility and relate to her disabilities because she encountered them during her stay as a patient. These barriers interfere with Plaintiff's full and equal access to the Facility, including when she is not a patient but a visitor to the Facility, and include but are not necessarily limited to the following:

i.   The night table in Room 105 lacks sufficient knee and toe clearances. Plaintiff had difficulty using the night table because of this during her stay as a patient, when sitting in bed or in her wheelchair.

ii.   The lighting and call button controls in Room 105 were not in an accessible location; they were tied to a string and would fall to the ground out of reach unless Plaintiff tied the string to her bed. It was difficult for Plaintiff to tie and untie the controls.

iii.   The window and blinds operable parts in Room 105 were not accessible as they were not located on an accessible route and the area in front of them was obstructed. Plaintiff could not reach the mechanisms to open or close the windows or blinds.

iv.   The closet rod in Room 105 was too high, which prevented Plaintiff from using it during her stay as a patient.

v.   The drawer storage in Room 105 was not located on an accessible route and the area in front of it was obstructed. As a result, Plaintiff could not store her belongings in the drawer during her stay as a patient.

vi.   The menu bulletin board in Room 105 was too high, which prevented Plaintiff from reading the menu during her stay as a patient.

*Moralez v. SSC Pittsburg Operating GP LLC, et al.*
Complaint

vii. The "family room" lacks proper clear floor space for a wheelchair to face the fireplace, coffee table, or windows, denying Plaintiff an experience equivalent to that offered to able-bodied individuals who are able to sit facing these elements. Because of this, Plaintiff was not able to enjoy the family room during her stay as a patient.

viii. The gazebo seating area lacks sufficient clear floor space for a wheelchair. Because of this, Plaintiff was not able to sit on the gazebo during her stay as a patient.

ix. The patio in the gym area is not accessible as the threshold is too high, and the routes of travel into the patio contain excessive changes in level and are obstructed by furniture and exercise equipment. Because of this, Plaintiff was not able to use the patio during her stay as a patient.

x. The door to the director's office is too narrow. Plaintiff had difficulty wheeling through the doorway when she came to the office for a meeting during her stay as a patient.

xi. The interior of the director's office lacks sufficient clear floor space for a wheelchair and/or maneuvering clearances on the interior side of the door. As a result, it was difficult for Plaintiff to maneuver her wheelchair inside the office when she came for a meeting during her stay as a patient.

12. There may exist other barriers at the Facility which relate to Plaintiff's disabilities, and she will seek to amend this Complaint once such additional barriers are identified as it is Plaintiff's intention to have all barriers which exist at the Facility and relate to her disabilities removed to afford him full and equal access.

//

//

*Moralez v. SSC Pittsburg Operating GP LLC, et al.*
Complaint

13.     Plaintiff was, and continues to be, deterred from visiting the Facility because Plaintiff knows that the Facility's goods, services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities. Plaintiff enjoys the goods and services offered at the Facility, and will undoubtedly return to the Facility once the barriers are removed.

14.     Defendants knew, or should have known, that these elements and areas of the Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Defendants have the financial resources to remove these barriers from the Facility (without much difficulty or expense), and make the Facility accessible to the physically disabled. To date, however, Defendants refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

15.     At all relevant times, Defendants have possessed and enjoyed sufficient control and authority to modify the Facility to remove impediments to wheelchair access and to comply with the 1991 ADA Accessibility Guidelines and/or the 2010 ADA Standards for Accessible Design. Defendants have not removed such impediments and have not modified the Facility to conform to accessibility standards. Defendants have intentionally maintained the Facility in its current condition and have intentionally refrained from altering the Facility so that it complies with the accessibility standards.

16.     Plaintiff further alleges that the (continued) presence of barriers at the Facility is so obvious as to establish Defendants' discriminatory intent. On information and belief, Plaintiff avers that evidence of this discriminatory intent includes Defendants' refusal to adhere to relevant building standards; disregard for the building plans and permits issued for the Facility; conscientious decision to maintain the architectural layout (as it currently exists) at the Facility; decision not to remove barriers from the Facility; and allowance that Defendants' property continues to exist in its non-compliant state. Plaintiff further alleges, on information and belief, that the Facility is not in the midst of a remodel, and that the barriers present at the Facility are not isolated or temporary interruptions in access due to maintenance or repairs.

//

## VI.     FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of "Full and Equal" Enjoyment and Use</u>

17.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

18.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

19.     Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Facility during each visit and each incident of deterrence.

<u>Failure to Remove Architectural Barriers in an Existing Facility</u>

20.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

21.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. <u>Id</u>. § 12182(b)(2)(A)(v).

22.     Here, Plaintiff alleges that Defendants can easily remove the architectural barriers at the Facility without much difficulty or expense, that the cost of removing the architectural barriers does not exceed the benefits under the particular circumstances, and that Defendants violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

23.     In the alternative, if it was not "readily achievable" for Defendants to remove the Facility's barriers, then Defendants violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

1

### Failure to Design and Construct an Accessible Facility

2
3
4

24.     Plaintiff alleges on information and belief that the Facility was designed and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA.

5
6
7

25.     The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

8
9
10

26.     Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.[1]

11

### Failure to Make an Altered Facility Accessible

12
13

27.     Plaintiff alleges on information and belief that the Facility was modified after January 26, 1993, independently triggering access requirements under the ADA.

14
15
16
17
18

28.     The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id.

19
20
21

29.     Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

22

### Failure to Modify Existing Policies and Procedures

23
24
25
26

30.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

27
28

---

[1] Nothing within this Complaint should be construed as an allegation that Plaintiff is bringing this action as a private attorney general under either state or federal statutes.

*Moralez v. SSC Pittsburg Operating GP LLC, et al.*
Complaint

31.     Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

Failure to Maintain Accessible Features

32.     Defendants additionally violated the ADA by failing to maintain in operable working condition those features of the Facility that are required to be readily accessible to and usable by persons with disabilities.

33.     Such failure by Defendants to maintain the Facility in an accessible condition was not an isolated or temporary interruption in service or access due to maintenance or repairs.

34.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

**VII.     SECOND CLAIM**

**Unruh Act**

35.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

36.     California Civil Code § 51 states, in part, that: All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

37.     California Civil Code § 51.5 also states, in part that: No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person.

38.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

39.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

40.     These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

41.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of $4,000 for each offense.

42.     Plaintiff also seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## VIII. THIRD CLAIM

### Denial of Full and Equal Access to Public Facilities

43.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

44.     Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

45.     Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

46.     Plaintiff alleges the Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Facility was not exempt under Health and Safety Code § 19956.

47.     Defendants' non-compliance with these requirements at the Facility aggrieved (or potentially aggrieved) Plaintiff and other persons with physical disabilities. Accordingly, Plaintiff seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

### IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Statutory minimum damages under section 52(a) of the California Civil Code according to proof.

3. Declaratory relief finding that Defendants violated the ADA.

4. Attorneys' fees, litigation expenses, and costs of suit.[2]

5. Interest at the legal rate from the date of the filing of this action.

6. For such other and further relief as the Court deems proper.

Dated: February 2, 2024                    MOORE LAW FIRM, P.C.


_/s/ Tanya E. Moore_____
Tanya E. Moore
Attorney for Plaintiff
Francisca Moralez

---

[2] This includes attorneys' fees under California Code of Civil Procedure § 1021.5.

*Moralez v. SSC Pittsburg Operating GP LLC, et al.*
Complaint

1
2

# VERIFICATION

3
4

I, FRANCISCA MORALEZ, am the plaintiff in the above-entitled action. I have read

5

the foregoing Complaint and know the contents thereof. The same is true of my own

6

knowledge, except as to those matters which are therein alleged on information and belief, and

as to those matters, I believe them to be true.

7

I verify under penalty of perjury that the foregoing is true and correct.

8
9
10

Dated:___02/02/2024_____          _____/s/ Francisca Moralez_____

11

Francisca Moralez

12
13

I attest that the original signature of the person whose electronic signature is shown

above is maintained by me, and that her concurrence in the filing of this document and

14

attribution of her signature was obtained.

15

_____/s/ Tanya E. Moore_____

16

Tanya E. Moore

Attorney for Plaintiff,

17

FRANCISCA MORALEZ

18
19
20
21
22
23
24
25
26
27
28